FILED 14 DEC '17 14:51 USDC-ORE

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 6:17-CR-455-AA |
| v. | INDICTMENT |
| RICHARD MACADANGDANG SALES, | 18 U.S.C. §§ 1343 and 1957 |
| Defendant. | Forfeiture Allegation(s) |
| | UNDER SEAL |

THE GRAND JURY CHARGES:

<u>COUNTS 1 THROUGH 4</u>
(Wire Fraud)
(18 U.S.C. § 1343)

1.    Beginning no later than 2011 and continuing through in or about 2013, in the District of Oregon and elsewhere, defendant **RICHARD MACADANGDANG SALES** devised and intended to devise a scheme and artifice to defraud and to obtain monies by means of false and fraudulent pretenses, representations, and promises, and during such period stated above, executed and attempted to execute such scheme and artifice and, in so doing, transmitted and caused to be transmitted in interstate and foreign commerce, by means of wire communications, certain electronic sounds, signals and writings, such scheme and artifice and wire communications being more fully and specifically set forth below.

Revised 03/2017

## MANNER AND MEANS AND SCHEME TO DEFRAUD

2. **SALES** used the following manner and means to carry out the material scheme and artifice to defraud:

3. In 2011, **SALES** began soliciting investors to fund his expenses for locating, possessing, and negotiating certain assets he claimed were worth millions of dollars.

4. Although **SALES'** description of the details of the investment varied, generally, the investors were led to believe that **SALES** possessed the ability to recover hundreds of millions of dollars worth of U.S. Treasury Notes that were located in East Asia and the Pacific.

5. **SALES** claimed that, as part of this recovery process, he would take control of a certain percentage of these funds and use them to build humanitarian housing projects for victims of natural disasters in third world countries.

6. **SALES** falsely represented that the investments, structured in the form of loans, would provide a quick return on investment, within approximately 60 days, and high returns of as much as 100%.

7. In addition to benefiting from the payment of interest on these loans, **SALES** falsely claimed that the investors, many of whom worked in the construction industry, would benefit by being the recipients of building contracts for these housing units.

8. **SALES** utilized investors L.H. and C.R. to solicit other investors on his behalf.

9. **SALES** falsely secured the investments through a document titled "Warrant" and signed by **SALES**. In this document, **SALES** agreed to underwrite all loans negotiated on his behalf. The warrants were provided to investors to alleviate their concerns regarding repayment of their investments.

10. **SALES** represented that he was the "Commissaris" of a secret group comprised of heads of state, world-renowned economists, the Vatican, and others. He claimed the "doctrine of our syndicate" carried the signatures of "John F. Kennedy, Pope John Paul VI, Golda Meir, Chang Kai Shek, Lee Kuan Yew, Queen Victoria and many others."

11. **SALES** claimed that this group financed thousands of projects worldwide. In addition, **SALES** falsely claimed that the United Nations "is just a front for what we want to do."

12. **SALES** represented that this group had given away or granted over one trillion dollars for "projects" around the world. **SALES** also falsely stated that he had personally given away billions of dollars.

13. **SALES** falsely claimed that he maintained high-level contacts in governments throughout the world, which allowed him access to the treasury notes and the unique ability to turn these assets into returns for the investors.

14. At various times during the scheme, **SALES** falsely represented that he had possession of "authentic, legal and registered assets" totaling more than $3 billion; that he had over $26 billion in U.S. Treasury Notes in his possession; and that he had "personally in a vault in Hong Kong" more than $800 billion in "authenticated assets."

15. Throughout the scheme, **SALES** requested additional funds from the investors in order for him to purportedly continue his collection of assets on behalf of the investors.

16. **SALES** communicated with investors via phone, email, and other internet messaging services.

17. Based on **SALES'** material false statements and representations regarding the assets he controlled, the assets he could access, his personal connections with world leaders and

others of notoriety, and his many other representations regarding his own notoriety, individuals invested their money with **SALES**.

18. Based on **SALES'** material false promises and statements, investors gave **SALES** more than $900,000.

19. At all times material and relevant herein, L.H., C.R., A.A., A.D., and R.D., persons known to the Grand Jury, were residing in Oregon.

## WIRE COMMUNICATIONS

20. On or about the dates set forth below in each Count, in the District of Oregon and elsewhere, **SALES**, for purposes of attempting to execute and executing the above-described material scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, promises, and omissions of material facts, knowingly caused the following communications via interstate wire:

| COUNT | DATE | DESCRIPTION OF EXECUTION |
|---|---|---|
| 1 | December 18, 2012 | A $15,000 transfer by check from victim L.H. deposited in Oregon and credited via interstate wire to an account at Bank of America in Washington. |
| 2 | February 26, 2013 | A $20,000 transfer via interstate wire from victim R.D. in Oregon to an account at Bank of America. |
| 3 | April 19, 2013 | A $20,000 transfer via interstate wire from victims S.A. and A.A. in Oregon to an account at Bank of America. |
| 4 | July 15, 2013 | A $16,000 transfer via interstate wire from victim A.D. in Oregon to an account at Bank of America. |

All in violation of 18 U.S.C. § 1343.

\ \ \

\ \ \

\ \ \

## COUNT 5
## (Money Laundering)
## (18 U.S.C. § 1957)

21. Paragraphs 1 through 20 are incorporated herein.

22. As set forth below, in the District of Oregon and elsewhere, defendant **RICHARD MACADANGDANG SALES** knowingly engaged in and attempted to engage in a monetary transaction, by, through, and to a financial institution, in and affecting interstate commerce, in criminally derived property that was of a value greater than $10,000 and was derived from a specified unlawful activity (wire fraud):

| COUNT | MONETARY TRANSACTION |
|---|---|
| 5 | On or about July 15, 2013, **SALES** caused $14,000 to be transferred from his Bank of America account to the account of A.M. |

In violation of 18 U.S.C. § 1957.

## FORFEITURE ALLEGATION

Upon conviction of the offenses alleged in Counts 1 through 5 of this indictment, **RICHARD MACADANGDANG SALES**, shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(2), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violations.

If any of the above-described forfeitable property, as a result of any act or omission of **SALES**:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of **SALES** up to the value of the forfeitable property described above.

Dated this 14 day of December 2017.

A TRUE BILL.

OFFICIATING FOREPERSON

Presented by:

BILLY J. WILLIAMS
United States Attorney

GAVIN W. BRUCE
Assistant United States Attorney