IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

UNITED STATES OF AMERICA,

vs.

RICHARD MACADANGDANG SALES,

Defendant,

Case No. 6:17-cr-00455-AA
**ORDER AND OPINION**

AIKEN, District Judge:

Defendant, Richard Macadangdang Sales, is charged via grand jury indictment with four counts of Wire Fraud in violation of 18 U.S.C. § 1343 and one count of Money Laundering in violation of 18 U.S.C. § 1957. Doc. 1. Following defendant's indictment, the Court granted in part and denied in part the government's Motion for a Competency Evaluation and Psychiatric exam. Doc. 43. The Court then held an evidentiary hearing to determine whether defendant was competent to stand trial

and whether restorative treatment should be ordered. For the reasons set forth below, the Court finds defendant competent to proceed to trial.

## BACKGROUND

The government alleges that defendant made false promises and statements which induced investors to give him more than $900,000 beginning no later than 2011 continuing through 2013. Defendant allegedly represented that the investments, in the form of loans, would provide investors with fast, high rates of return. Defendant allegedly led investors to believe, among other things that he possessed the ability to recover hundreds of millions of dollars in assets from foreign countries.

After being indicted, defendant was escorted by U.S. federal agents from Indonesia to San Francisco, California, where he was arrested. He was initially detained on February 12, 2018 by Magistrate Judge Thomas Coffin. Later, on March 1, 2018, Magistrate Judge Jolie Russo ordered defendant released with conditions to Lane County Residential Reentry Center ("RRC"). After 30 days he was released from the RRC and obtained an apartment in Eugene, Oregon. He has successfully complied with the terms of pre-trial release since that time.

In August of 2018, defendant's former attorney filed a motion to determine competency.[1]  Doc. 27. The motion included a psychological evaluation of defendant

---

[1] Defendant was initially represented by Assistant Federal Public Defender Craig Weinerman. On February 26, 2018, CJA panel attorney Bradley Cascagnette was appointed to represent defendant. Doc. 18. Mr. Cascagnette filed the original motion for competency determination. Doc. 27. However, Mr. Cascagnette withdrew from this case prior to the subsequent competency litigation when he was appointed as a Judge on the Lane County Circuit Court. On October 15, 2018, CJA panel

from Dr. David Truhn, Psy.D., who opined that, in his opinion, defendant was not able to competently aid and assist in his own defense.

The government later filed a Motion for a Competency Evaluation and Psychiatric exam. Doc. 43. The Court granted the motion in part and ordered that defendant undergo a further competency evaluation while on release in the community. The Court then held a competency hearing pursuant to 18 U.S.C. § 4247. Doc. 44. At the hearing, defendant opposed the government's motion and maintained that he is competent to proceed to trial, while the government argued in favor of finding defendant incompetent and committing him to the custody of the U.S. Attorney General for restorative treatment in the U.S. Bureau of Prisons system. At the hearing, the Court heard argument from the parties and received testimony from defendant and Dr. Michelle R. Guyton, Ph.D., ABPP.

## LEGAL STANDARD

It is a violation of due process to convict a person who is mentally incompetent to stand trial. *Pate v. Robinson*, 383 U.S. 375, 378 (1966). A person is incompetent if they suffer from a mental disease or defect that renders the person unable to understand the nature and consequences of the proceedings or unable to assist properly in their defense. 18 U.S.C. § 4241(a). Competency requires a defendant to have a "sufficient present ability to consult with [their] lawyer to a reasonable degree of rational understanding" and have "a rational as well as factual understanding of

---

attorney Richard Fredericks was then appointed to serve as counsel for defendant in this case and has continued in the capacity to the present date. Doc. 32.

the proceedings against [them]." *Dusky v. United States*, 362 U.S. 402, 402 (1960). The Dusky standard applies at all stages of a proceeding. *Godinez v. Moran*, 509 U.S. 389, 399-400 (1993). Competence requires more of a defendant than passively observing trial: "it requires the mental acuity to see, hear and digest the evidence, and the ability to communicate with counsel in helping prepare an effective defense." *Odle v. Woodford*, 238 F.3d 1084, 1089 (9th Cir. 2001). "The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the ability to understand the proceedings." *Godinez*, 509 U.S. at 401 n. 12 (emphasis in original).

The Court may rely on medical opinions and its own observations of the defendant's comportment to determine competence, but no single factor is determinative. *Drope v. Missouri*, 420 U.S. 162, 180 (1975); *Davis v. Woodford*, 384 F.3d 628, 655 (9th Cir. 2004) (citing *Torres v. Prunty*, 223 F.3d 1103, 1108-09 (9th Cir. 2000)). Defense counsel's representations concerning the competence of his client is a factor that should be considered. *Id*. at 177 n. 13 (noting that "an expressed doubt ... by one with the closest contact with the defendant is unquestionably a factor which should be considered") (internal punctuation and citation omitted))

## DISCUSSION

In making this determination, the Court considers the arguments from the parties as well as the testimony offered by defendant and Dr. Guyton at the competency hearing. The Court also considers the written reports from Dr. Guyton, Dr. Truhn, and Licensed Counselor Tui Lindsey, M.S., CDP II.

/ / /

I.    *Burden of Proof*

The parties discuss whether the defendant or the government should bear the burden of proving competency or incompetency. The federal statute providing for competency hearings does not allocate which party bears the burden of proof, nor has the Supreme provided definitive guidance on the question. The Ninth Circuit has consistently held that normally the government must prove the defendant's competence by a preponderance of the evidence in the Ninth Circuit. *United States v. Hoskie*, 950 F.2d 1388, 1392 (9th Cir. 1991) (citing *United States v. Frank*, 933 F.2d 1491, 1493 (9th Cir. 1991)); *but cf. United States v. Robinson*, 404 F.3d 850, 856 (4th Cir. 2005) (requiring defendant to prove incompetency by a preponderance of the evidence).

In the present case, it is the government which argues in favor of finding defendant incompetent, while defendant and his current counsel maintain that he is competent to proceed to trial. Defense counsel noted at oral argument, that defendant wanted to withdraw the original motion filed his former attorney, but that government wished to pursue the issue. Defendant has also represented that he does not intend to pursue a defense of insanity in this case.

While recognizing the odd procedural posture of this motion, the Court can find no authority which would allow it to deviate from the Ninth Circuit's published holding in *Hoskie*.[2] The Supreme Court has held, however, that "the allocation of the

---

[2] The Court notes its concern that this might lead worrying results in cases where a defendant maintains her competency, but government wishes that defendant

burden of proof to the defendant will affect competency determinations only in a narrow class of cases where the evidence is in equipoise; that is, where the evidence that a defendant is competent is just as strong as the evidence that he is incompetent." *Medina v. California*, 505 U.S. 437, 449 (1992). Ultimately, it is the Court that must determine whether a defendant is competent to stand trial by a preponderance of the evidence. The Court need not reach the question of which party bears the burden of proof here as the evidence supports a finding competency.

II.    *Dusky Analysis*

The Court finds by a preponderance of the evidence that defendant has both a present sufficient ability to consult with his counsel to a reasonable degree of rational understanding as well as a rational and factual understanding of the proceedings against him. Accordingly, defendant is competent to stand trial. The Court bases this finding on defendant's testimony at the hearing, the arguments of his counsel, and certain portions of the medical evidence.

Regarding the medical evidence in this case, defendant was first evaluated by Dr. Truhn over several dates in 2018 including, March 9, 13, 26, April 18, and June 4. Dr. Truhn's final report, submitted on June 13, 2018, was based a series of interviews, mental status evaluations, and specialized tests. Licensed Counselor Tui Lindsey interviewed and evaluated defendant, her findings and recommendations were included in an April 11, 2018 report. Dr. Guyton performed on interview with

---

to be found incompetent and, as a result, be committed to custody for restorative treatment.

defendant which lasted approximately three-and-a-half-hours on May 3, 2019.  Her final report, which included no specialized testing and relied heavily on Dr. Truhn's report, was issued on May 22, 2019.[3]

Both Dr. Truhn and Dr. Guyton diagnosed defendant with delusional disorder, grandiose type.  Defendant's alleged delusions involve his self-reported previous work and life history.  In short, defendant told his examiners that over later portion of his life he was involved in high level international diplomacy and humanitarian efforts.  He represents that he has met, interacted with, and advised world leaders such as Margret Thatcher, Mikhail Gorbachev, and Boris Yeltsin among others.  According to the reports, defendant maintained that he has access to large sums of money and assets related to the Bank of China which he used for his humanitarian efforts.  At oral argument, defendant explained the history of some of these beliefs which involve thousands of years in history and assets worth trillions of dollars.

However, the diagnosis of a mental disorder alone does mean defendant is incompetent to proceed to trial.  The Court instead must determine, consistent with the Supreme Court's guidance in *Dusky*, whether any such mental defect renders defendant unable to understand the nature and consequences of the proceedings or unable to assist properly in his defense.

///

///

---

[3] Given the limited nature of her evaluation, the Court gives lesser to weight to Dr. Guyton's findings than to the report of Dr. Truhn and defendant's own testimony.

A.    *Present Ability to Consult with Counsel*

To stand trial, a defendant must be able to participate in his defense by communicating effectively with his counsel to reasonable degree of rational understanding. *Drope v. Missouri*, 420 U.S. at 171-72.

Here it appears that the defendant has no issues ineffectively communicating with his attorney. At the hearing on this matter, defendant represented that he had met with his present counsel twenty to thirty times. He also estimated that he had spent fifty or sixty hours working with defense counsel and an investigator going over the details of this case. The defense also noted that they have collaboratively reviewed all of the approximately seventeen thousand pages of discovery in this matter.

Indeed, observations from Dr. Truhn and Dr. Guyton's reports support that defendant can effectively communicate with his attorney. Dr. Truhn noted in his report that there was evidence that defendant had adequate verbal skills for communication with his attorney, but that there was a possibility that his delusional thinking could affect his communication. Defendant produced "average" scores on the Wechsler Adult Intelligence Scale which, according to Dr. Truhn, indicated that "[h]e has the intellectual ability to participate in his defense." Truhn Rep. at 11. Dr. Truhn also noted on that defendant's results on the Comprehensive Trail Making Test were "not indicative of a cognitive disorder." *Id.* On the Wide Range Achievement Test, defendant "scored in the superior range and at greater than the 12th grade level on a test of reading." *Id.* Defendant's scores on the Minnesota

Multiphasic Personality Inventory-2-RF, according to Dr. Truhn, were similar to individuals who experienced persecutory ideation.

Dr. Truhn also noted that defendant "is able to engage in meaningful discussion and communication and accomplish activities of daily living without impairment." *Id.* at 14. Dr. Truhn noted, however, that defendant's delusions likely impacted his ability to aid assist in his defense and were intertwined with the alleged criminal activity.

In her report, Dr. Guyton also noted that defendant's beliefs "do not impair his ability to consult with counsel at present" though this might change if defendant perceived that the counsel believed defendant to be suffering from a mental illness.[4] Guyton Report at 2. Dr. Guyton also reported that defendant understood attorney-client confidentiality and that he told her that he was comfortable confiding in his attorney. Defendant also said that he trusted his counsel to him with provide accurate information and advice. Defendant opined would listen to his attorney's advice and follow it, if it made sense to him. *Id.* at 13. In sum, Dr. Guyton found that defendant "appears able to consult with counsel through relaying and receiving information, considering advice, and following his attorney's suggestions." *Id.* Dr. Guyton did testify at oral argument that the she had concerns that the quality of defendant's communications was influenced by his alleged irrational beliefs.

/ / /

---

[4] In briefing and oral argument, however, defense counsel emphatically disagreed with Dr. Guyton's opinion and maintains that defendant client is competent to proceed to trial.

Here, defendant's work with his counsel to date demonstrates to the Court that defendant can communicate effectively with counsel, consider his counsel's advice, and consider his legal options. In making this determination, the Court relies on the representations of defense counsel and on the testimony of defendant as well as specific findings in medical reports.

B.    *Rational and Factual Understanding of the Proceedings*

Defendant must understand the nature and object of the proceedings against him. *Drope v. Missouri*, 420 U.S. at 171. A rational and factual understanding of the proceedings includes the ability to make a "reasoned choice [from] among the alternatives presented." *Miles*, 108 F.3d 1109, 1112 (9th Cir. 1997).

The Court finds that defendant has a rational and factual understanding of the proceedings and has the ability make a reasoned choice regarding his options in this case. Defendant clearly holds some seemingly irrational beliefs, but "[t]he presence of some degree of mental disorder in the defendant does not necessarily mean that he is incompetent to assist in his own defense." *United States v. Mackovich*, 209 F.3d at 1227, 1233 (10th Cir. 2000) (internal citation and punctuation omitted); *see also United States v. Widi*, 684 F.3d 216, 221 (1st Cir. 2012) ("A defendant may have serious mental illness while still being able to understand the proceedings and rationally assist his counsel.") (internal citations omitted))

Defendant clearly has a factual understanding of the nature and object of the proceedings against him. Dr. Truhn observed in his report that defendant is able to under that proceedings against him as was knowledgeable about courtroom

proceedings and roles of the participants in those proceedings. Truhn Report 14-15. He noted that defendant understood the charges against him and the possible penalties if convicted. *Id.*    Dr. Truhn also reported that defendant was knowledgeable of the options available to him in the trial process, such as plea bargaining or going to trial, calling witnesses, and the use of evidence. *Id.*

Dr. Guyton also opined that defendant's "beliefs do not impart his ability to understand his legal case and the courtroom procedures." Guyton Report 2. She reported that defendant "is intelligent and well-studied in these areas. He completely understands what he is being charged with and why and how his case is likely to proceed through the court." *Id.* at 14.    Dr. Guyton noted that defendant understood the roles of court and trial participants and court processes.    She also opined that defendant knew and understood the identity of alleged victims, the charges against him, the penalties if convicted, and his options to enter a guilty plea or proceed trial. At the hearing on this matter, Dr. Guyton specifically reported that defendant would not require legal training as part of any restorative treatment.[5]

Both examiners found defendant to be engaged in the evaluation process and properly oriented at his examinations.    They also concluded that there was no

_____

[5] Dr. Guyton opined her report that she felt defendant required psychiatric treatment for restoration of competency.  She noted that defendant would require stabilization and an evaluation with a recommendation for medication which a treatment to team could then administer.  She specifically testified that, in her opinion, defendant would not get better without psychotropic medication. Defendant, however, has been consistent in stating that he would refuse to voluntarily take such medication.  Though not at issue currently, the Court has doubts that the government could be successful in satisfying the test for involuntarily medication provided under *Sell v. United States*, 539 U.S. 166 (2003)

evidence that defendant was exaggerating or feigning symptoms or exaggerating cognitive defects.

Both examiners did however express concerns regarding defendant rational appreciation of this case. Specifically, Dr. Guyton noted that she believed defendant's decision making was reliant on and adversely affected by his delusions. Likewise, Dr. Truhn opined that because of his delusions, defendant was not able to employ rational judgement in his decision-making regarding certain aspects of his defense. Truhn Report at 15.

For example, Dr. Truhn reported that defendant told him that if trial were going badly, defendant would use immense financial and political resources to bring in a legal "dream team" to help with his defense. *Id*. Dr. Truhn concluded that such thinking would interfere with defendant's ability to rationally consider plea bargaining or the preparation of his defense. However, at oral argument, defendant denied making such statements to Dr. Truhn or that he could call on foreign governments for help at trial. Defendant reiterated that he was happy with the representation provided by his current counsel and outlined how he had worked successfully with counsel to date. Indeed, both Dr. Guyton and Dr. Truhn reported that defendant had good relationships with both of his appointed CJA attorneys and trusted them to lead his defense in this case.

Dr. Guyton also wrote and testified that defendant had an unrealistic expectation of his success at trial. Defendant allegedly reported that he believed there was no chance we would lose at trial. However, at the hearing on this matter

defendant testified that he understood the odds against him and that he was aware that the government wins most of the cases that are brought to trial. However, he testified believes that he can succeed at trial once all of the evidence is considered by a jury.

Turning to the issue of evidence in this case, Dr. Guyton and Ms. Lindsey reported that the without supporting documentation, many of defendant claims about himself seemed fanciful.[6] In her report, Dr. Guyton noted that defendant believed he would succeed at trial based on evidence, such as bank records and press releases, that he possessed. Dr. Guyton complained that none of this alleged evidence had been shared with her. However, the record is clear that defendant declined share any such documentation with her on the advice of his counsel. Indeed, defense counsel pointed out at oral argument that they had no obligation to share such information and there were good reasons for not revealing it prior to trial. Thus, the Court does not find that this weighs in favor of finding defendant incompetent.

Dr. Guyton also argued that defendant is closed off to potential cases resolutions due to his irrational beliefs and desire to retain his passport so that he can continue with his international work. Dr. Truhn also concluded that defendant would not accept a plea bargain, as it would affect defendant's ability to continue with alleged work. At oral argument defendant contradicted this assessment and testified

---

[6] Dr. Guyton reported that defendant's claims about his previous international work defied common sense and were not typical of diplomatic relations. Setting aside whether defendant's claims are plausible, the Court notes that Dr. Guyton has not been qualified to offer opinions in the field of international diplomacy.

that he would consider a plea negotiation if he felt the case were going against him. He simply believed that he would be successful at trial at this time, a position that was supported by his counsel.

As noted above, this defendant, like many others who appear in federal court, undoubtedly holds idiosyncratic beliefs, some of which he described at the hearing on this matter. However, wishing to proceed to trial when examiners believe he would not be successful is not sufficient to find defendant incompetent. Indeed, "competent people can and do make decisions which others consider irrational." *United States v. Wiggin*, 429 F.3d 31, 37. 1st. Cir. 2005.

In finding that defendant has sufficient rational and factual understanding of the proceedings against him, the Court relies on the representations of defense counsel and the Court's own observations of defendant's comportment. The Court had occasion to observe defendant at prior motion hearings and status conferences. Docs. 44, 47 and 49. Primarily, the Court relies on its observations of defendant at the competency hearing itself. Doc. 54. While defendant did explain some of seemingly unorthodox beliefs under cross examination, the Court finds that they do not interfere with his ability to understand the proceedings against him or assist properly in his own defense.

## CONCLUSION

Defendant has the present sufficient ability to consult with his counsel to a reasonable degree of rational understanding and has a rational and factual

understanding of the proceedings against him.  As a result, defendant is competent
to stand trial.

IT IS SO ORDERED

Dated this <u>24th</u> day of June, 2020.


_____/s/Ann Aiken_____
Ann Aiken
United States District Judge